(8 App. Div. 78)

### BRASS et al. v. RATHBONE et al.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

1. MUNICIPAL CORPORATIONS—POWER OF WATER COMPANY.

Laws 1850, c. 235, § 19, authorizing the water commissioners of the city of Albany to make such by-laws and regulations as may be deemed advisable, to have the same force when ratified by the common council as any ordinance, and providing that such rules may be enforced by cutting off the supply of water, authorizes the water commissioners to pass by-laws providing that no more than 150 gallons of water per day shall be used in any building without a special permit, and that, if more than such quantity is used without a permit, the occupant of the building shall be liable to a penalty, and that the water may be shut off.

2. SAME—CUTTING OFF WATER—COMPLAINT.

The owner of a building, who has leased it for a term of years, and has paid the water rent, cannot complain of the action of the water commissioners in cutting the water off from the building, because the tenant did not comply with the regulations of the water commissioners.

3. INJUNCTION—ENFORCEMENT OF WATER TAX.

The collection of a water tax will not be enjoined, except under circumstances of great necessity, and to prevent irreparable damage.

Appeal from special term, Albany county.

Action by Richard W. Brass and others against Albert Rathbone and others to enjoin defendants from cutting off the water supply to plaintiffs' premises. From a judgment granting an injunction pendente lite, defendants appealed. Reversed.

Argued before PARKER, P. J., and LANDON, MERWIN, and PUTNAM, JJ.

John A. Delehanty, for appellants.
Eugene D. Flanigan, for respondents.

PUTNAM, J.　By section 19, c. 235, of the Laws of the State of New York of 1850, the water commissioners of the city of Albany were authorized to "make such by-laws and regulations for the preservation, protection and management of the said water works, and the use and control of the water, as may be deemed advisable, and which, when ratified or approved by the common council, shall have the same force and effect as any law or ordinance by them enacted." And by section 29 of the same act it is provided, among other things, that the observance of said rules may be enforced by cutting off the use and supply of water.　Section 23 of the said act, as amended by chapter 253 of the Laws of 1854, enacts that the water commissioners shall establish a scale of annual rents for the supply of water, or benefits arising therefrom, to be called "water rents," and apportioned to the different classes of buildings in the city.　And section 25 of the act of 1850, as amended by the act of 1854, provides, among other things, that buildings which shall consume water beyond the quantity required for ordinary use or common purposes shall pay therefor, annually in advance, to the chamberlain of the city of Albany, special rates in addition to the annual water rent, such special rates to be determined by the commissioners.　It appears by the papers presented to us that the water commissioners, in pursuance of the power conferred on them by section 19 of the act of 1850, made certain ordinances, which were approved and ratified by the common council of the city of Albany.　One of said ordinances provided that "occupants of buildings assessed for annual rents shall be allowed to use in and about their buildings 150 gallons of water daily for the ordinary uses, and not exceeding that quantity, without a special permit."　By another of said ordinances it was enacted that if "more water is used in any building than is allowed by these regulations, without a permit therefor, the occupant of the building shall be liable to a penalty of from two dollars to fifty dollars, to be fixed by the commissioners; and the superintendent, in his discretion, is authorized to shut off the supply pipe."　These ordinances were authorized by the acts of 1850 and 1854, and have the force of, and are to be deemed as, a local law applicable to the city of Albany.　The plaintiffs paid $15, the annual water-tax assessment against their premises, occupied by one Mc-Grail, their tenant, for the year ending on the 1st day of December, 1895.　This payment of the annual tax authorized the use by the plaintiffs' tenant of 150 gallons daily, and no more.　The use by him of a greater quantity of water, under the statute and ordinances above stated, was unauthorized, wrongful, and unlawful.　It appears by the affidavit on which the plaintiffs applied for the temporary injunction, and the papers annexed thereto, that their premises No. 538 Broadway, in the city of Albany, were charged with the sum of $60.73 as a special rate or tax for water used by their tenant from December 15, 1894, to May 15, 1895, beyond the ordinary amount authorized, and that a notice was served on said plaintiffs by the water commissioners that if the special rate or tax was not paid the water would

be shut off from·said premises. The papers on which the plaintiffs move do not show that such extra water was not in fact used by the occupant of the building in question, or that a permit therefor had been obtained by the plaintiffs or their tenant. There is a statement in the moving affidavit "that deponent and his co-tenants [the plaintiffs] have at no time between December 15, 1894, and May 15, 1895, used said premises for any purpose subjecting them, or either of them, or said building, to a charge to said defendants for any special water rates." But such an averment does not show that their tenant, McGrail, has not used on said premises water beyond the amount authorized. The affidavit also states that the deponent "is informed and believes his said tenant has paid heretofore for extra water used in connection with his said business." Such an averment on information and belief, without stating the sources of his information or the grounds of his belief, and without procuring the affidavit of McGrail, is not to be regarded. Nor do I understand that the plaintiffs' counsel claims that extra water was not used by McGrail, but he insists "that, if there is a charge for extra water used, it must be against the tenant, and not against them; that they, having paid for the ordinary water privileges, are entitled to enjoy them; that in no event can they be deprived of the ordinary water supply." But, as· we have seen, the ordinances enacted by the water commissioners of the city of Albany in pursuance of the act of 1850, which have the same force as would a law passed by the legislature, provided that the plaintiffs or their tenant, paying the annual water rent charged against said premises, were authorized to use 150 gallons of water daily, and no more, and, if more water was used, that the water commissioners were authorized to shut off the supply pipe. The defendants, therefore, in giving notice that unless the said rate was paid the water would be shut off, were merely threatening to do a legal act. The plaintiffs paid the ordinary water tax to obtain an ordinary supply of water for the use of their tenant occupying their premises, with knowledge of, and bound by, the provisions of the local law, which provided that if the occupant of the building should use more than 150 gallons daily, which was authorized, the supply pipe might be cut off. The plaintiffs could not, by obtaining for McGrail a right to use 150 gallons'of water a day, confer on him authority to violate the legal ordinances of the water commissioners, to use an unlawful amount of water, or prevent the defendants, in case of such unlawful use by McGrail, from cutting off his supply of water. Although section 25 of the act of 1850, as amended in 1854, contemplates that, where more water is used than the quantity required for ordinary purposes, a permit shall be granted and payment made before such use, it cannot be doubted that the water commissioners, when an occupant of a building, without a permit or prepayment or notice, wrongfully uses an amount in excess of the amount authorized, may, under the provisions of section 19, and the other provisions of the acts of 1850 and 1854, make rules and regulations applicable to such cases. Under the general power conferred upon them by such section, they can fix a price for extra water thus used without permission, and can provide for shutting off the water in case of nonpay-

ment of such special rates. I think, therefore, that, in serving the notice of which the plaintiffs complain, the defendants were merely performing their duty as public officers of the city of Albany, in attempting to prevent the wrongful appropriation by the plaintiffs' tenant of an ex+ra supply of water without payment therefor.

It is not apparent from the moving papers how shutting off the water from the premises in question by the defendants would cause an injury to the plaintiffs. The property is in possession of their tenant under a lease extending to the year 1900, and the lease does not provide for the payment by the lessors of any water rates for water used by the tenant. The plaintiffs have paid the regular water rent, which gave to the tenant 150 gallons daily. If he wrongfully and unlawfully used more water than he was authorized to, without payment and permission in advance, as required by the ordinances, the injury to him resulting from such wrongful act would not give him any claim against his landlords. The injury that might be produced by shutting off the water would be an injury to the occupant of the premises, and not to the plaintiffs. I am unable to see how the tenant could successfully claim an eviction in consequence of shutting off the water as suggested, or a right to leave the demised premises as untenantable, under the provisions of chapter 345 of the Laws of 1860; for that chapter only confers such a right on the tenant when premises become untenantable without any fault on his part, and, if cutting off the supply of water from the premises in question would render them untenantable, it would be the result of the wrongful violation of the said ordinances by the tenant.

I am also under the impression that, in any view of the case, the plaintiffs are not entitled to maintain this action for an injunction. It has long been settled that courts of equity will not sustain an acion to restrain the collection of a tax, except under circumstances of great necessity, and to prevent irreparable damage (Railroad Co. v. Smith, 39 Hun, 332–337, and authorities cited); that the same rule should apply where the court is asked to restrain proceedings to enforce the payment of a water tax assessed by a municipal corporation; and that no such state of facts is shown in the moving papers as justified the court in granting the temporary injunction under the rule above referred to. But I deem it unnecessary, in view of the conclusions above arrived at, to consider this branch of the case, or the other questions discussed in the briefs of counsel.

The order should be reversed, with costs and disbursements, and the motion denied, with costs. All concur.